**KANG HAGGERTY, LLC**
Kyle Garabedian (Atty. ID No. 319122)
123 South Broad Street, Suite 1950
Philadelphia, PA 19109
(215) 525-5850
kgarabedian@kanghaggerty.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HANDMADE PASTRIES, INC.** and **SAHAR ASLAN,**<br><br>*Plaintiffs,*<br><br>*v.*<br><br>**RED MILL FARMS, LLC d/b/a JENNIES GLUTEN FREE BAKERY, JENNIE'S RAW ORGANIC COCONUT PRODUCTS LLC, JENNIES GLUTEN FREE LLC,** and **GILBERT SHWOM,**<br><br>*Defendants.* | **JURY TRIAL DEMANDED**<br><br>**NO.** ______________________________ |

**VERIFIED COMPLAINT**

Plaintiffs Handmade Pastries, Inc. ("Handmade") and Sahar Aslan ("Aslan"; together with Handmade, "Plaintiffs"), through undersigned counsel, bring this action against Defendants Red Mill Farms, LLC d/b/a Jennies Gluten Free Bakery ("Jennies"), Jennie's Raw Organic Coconut Products LLC ("Raw Coconut"), Jennies Gluten Free LLC ("Gluten Free"), and Gilbert Shwom ("Shwom"; together with Jennies, Raw Coconut, and Gluten Free, "Defendants") and, in support thereof, aver as follows:

## PRELIMINARY STATEMENT

1. This action arises from Defendants' years-long, cutthroat course of conduct toward Handmade and its principal, Aslan—conduct that left in its wake broken promises, a breached agreement, and violated fiduciary duties.

2. Jennies is a family-run business that manufactures and distributes organic and gluten-free coconut macaroons, coconut bites, and coconut bars. Among its best-selling products are its Organic Coconut Bites (the "Bites") and its organic coconut bars (the "Bars"; together with the Bites, the "Products"). The Products are widely available at retailers across the country, including Costco, Publix, Sprouts, and Walmart. The Products are a major source of revenue for Jennies.

3. However, Jennies did not develop the Products. It did not conceive the concept, develop the recipe, or source the ingredients. It did not put in the painstaking hours testing batch after batch, refining the process again and again until the Products were ready for market.

4. Rather, Handmade—through its principal, Aslan—did all of that work.

5. In 2014, Handmade and Jennies—acting through Aslan and Shwom, respectively—entered into an oral agreement for the development of the Products, which Shwom later confirmed in a June 9, 2016 email (the "Agreement"). A copy of the June 9, 2016 email is attached hereto as **Exhibit 1**.

6. Pursuant to the Agreement, Handmade was to develop the Products in exchange for 25% of the pretax profits of a Jennies subsidiary created to sell the Products. *See* Ex. 1. Handmade would also have a two-year option to buy 25% of the new entity's stock and assets for $100,000. *See id.*

7. Handmade delivered: by 2017, the Products were commercially available.

8. At first, Jennies performed under the Agreement, paying Handmade its percentage of the subsidiary's pretax profits approximately every month.

9. Then, abruptly, in December 2018, Jennies—through Shwom—informed Handmade that it would stop paying and was cutting Handmade out of the Products business.

10. Despite this conduct, Shwom managed to placate Aslan and dissuade him from filing suit for years to come. As part of that scheme, Shwom agreed to form a new entity with Aslan, Second Wind Foods, LLC ("Second Wind"), to develop products, with each holding a 50% membership interest.

11. Aslan devoted several years of focused work to Second Wind, all the while serving Shwom's true purpose: keeping Aslan distracted. But in 2026, after Aslan secured a customer order for Second Wind, Shwom shut it down. Without justification, Shwom acted contrary to Second Wind's interests, rejected the customer's order, unilaterally dissolved Second Wind, and permanently severed ties with Aslan.

12. Since December 2018, Defendants have not paid Handmade a dime of what it is owed under the Agreement. Worse still, Shwom manipulated Aslan and breached the fiduciary duties he owed as a member of Second Wind by sabotaging the venture.

## THE PARTIES

13. Plaintiff Sahar Aslan is an adult individual and a citizen of the State of New York, with an address of 58 Hagan Dr., Poughkeepsie, New York 12603.

14. Plaintiff Handmade Pastries, Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 512 W. Penn St., Long Beach, New York 11561.

15. Defendant Red Mill Farms, LLC d/b/a Jennies Gluten Free Bakery is a Pennsylvania limited liability company located at 590 Rocky Glen Road, Moosic, Pennsylvania 18507. Upon information and belief, Jennies is a citizen of Pennsylvania for jurisdictional purposes.

16. Defendant Jennie's Raw Organic Coconut Products LLC is a Pennsylvania limited liability company located at 590 Rocky Glen Road, Moosic, Pennsylvania 18507. Upon information and belief, Raw Coconut is a citizen of Pennsylvania for jurisdictional purposes.

17. Defendant Jennies Gluten Free LLC is, upon information and belief, a Pennsylvania limited liability company located at 590 Rocky Glen Road, Moosic, Pennsylvania 18507, and/or a trade name or fictitious name under which Raw Coconut does business. Upon information and belief, Gluten Free is a citizen of Pennsylvania for jurisdictional purposes. Raw Coconut and Gluten Free are referred to together herein as the "New Entity."

18. Defendant Gilbert Shwom is an adult individual and a citizen of Pennsylvania who can be served at 590 Rocky Glen Road, Moosic, Pennsylvania 18507.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between Plaintiffs and Defendants.

20. Venue is proper in this district under 28 U.S.C. § 1391 because Defendants reside in this District and this District is where a substantial part of the events giving rise to this action occurred.

## FACTS

**Aslan's Background and Early Dealings with Jennies**

21. Aslan is an experienced food-industry entrepreneur who has made his career out of product development, research, and distribution in the snack-food and gluten-free markets.

22. Aslan entered the gluten-free market in the mid-2000s, long before the "gluten-free" trend became as widespread as it is today.

23. Aslan developed a shelf-stable gluten-free pound cake and other snack products. He distributed the pound cake first through Handmade, which was incorporated in 2008, and then through another venture, New Harvest Naturals.

24. Shwom controlled Jennies, which manufactured and sold coconut macaroons. Shwom, who had steered Jennies toward organic products since taking over the business, took an interest in New Harvest Naturals.

25. In approximately 2011, Jennies acquired New Harvest Naturals and took over the manufacture of its products in its Moosic, Pennsylvania facility.

26. Handmade maintained a vendor-customer relationship with Jennies, purchasing products from Jennies and distributing them to Handmade's own customer base.

**Jennies and Handmade Enter into the Agreement**

27. In August 2014, at Jennies' facility in Moosic, Pennsylvania, Shwom approached Aslan and proposed that the two could "do something lucrative" together by using Aslan's skill and vision to grow the Jennies brand beyond its coconut macaroons.

28. Shwom directed that Handmade work within the confines of Jennies' existing manufacturing capabilities: Handmade would develop the products, and Jennies would provide the infrastructure and manufacturing network.

29. Aslan, on behalf of Handmade, and Shwom, on behalf of Jennies, agreed that Jennies would form a new entity to market any products that Handmade developed. Aslan envisioned developing both an organic coconut bite and an organic coconut bar.

30. Handmade and Jennies agreed that Handmade would receive twenty-five percent (25%) of the pretax profits of the new business, and would have the option to purchase a twenty-five percent (25%) interest in the business (*i.e.,* the Agreement, defined above).

31. Though initially an oral contract, the Agreement was later confirmed in writing in an email Shwom sent to Aslan on June 9, 2016, which states:

> This will confirm that your tireless effort to develop in all aspects our Raw Coconut bar and bite program and our protein bar program as per our verbal agreement entitles you to 25 % of the pretax profits of the Jennies Organic Raw Coconut bar llc [sic]. You and I have established a cost to segregate the profits for these bars. We will memorialize the formulation of the profit structure. This also acknowledges that you will have the option for the next two years to buy 25 % of the stock and assets of the llc [sic].
>
> I have calculated that this option is valued at $100,000.00. We can go into details as to the way the purchase price can be paid.

Exhibit 1.

**<u>Aslan Brings the Products to Market</u>**

32. Further performance under this agreement began almost immediately, with Aslan making weekly trips to Jennies' facility in Moosic, Pennsylvania, to formulate the products, conduct test runs on the equipment, and oversee the transition from development to commercial production.

33. Shwom arranged for the formation of the new Jennies entity contemplated by the Agreement, the New Entity.

34. Aslan also helped develop the Products' packaging.

35. By November 2017, the Products—USDA-organic, certified gluten-free coconut snacks—were ready and commercially available, including the individually wrapped Bites in two varieties: one featuring cacao and one featuring goji berries.

36. Aslan's involvement did not end once the Products were developed.

37. After launch, Aslan continued to support the business by attending trade shows, conducting marketing, and cultivating customer relationships, and he maintained the brand's Amazon retail registry.

38. Consistent with the Agreement, from 2017 through 2018, Jennies paid Handmade monthly commissions based on the New Entity's pretax profits, though the amounts were modest while the product was still gaining traction.

39. Throughout this period, Aslan sought to exercise Handmade's purchase option in the New Entity.

40. Shwom repeatedly assured Aslan that Handmade could pay the option price through deductions from its monthly commissions.

**<u>The Products Transform Jennies' Business</u>**

41. Eventually, the Products became a substantial commercial success, earning placement at Costco and other national retailers, including Whole Foods, Publix, Sprouts, Walmart, and others.

42. As demand for the Products grew, Jennies substantially expanded its production capacity.

43. Before Aslan developed the Products, the Jennies facility operated a single production line with an aging extruder and could bag its products only by hand.

44. Fueled by the Products' success, Jennies expanded to four fully automated lines that could wrap approximately 300 pieces per minute and an auto-bagger that could fill approximately 60 bags per minute.

45. Upon information and belief, the New Entity is the owner of the new equipment.

**<u>Jennies Cuts Handmade Out</u>**

46. For all the Products' success, however, Jennies markets itself as a family business—and Aslan was not a member of the family.

47. In December 2018, Shwom telephoned Aslan and told him that "things don't always go your way" and that Jennies would no longer honor the Agreement.

48. Jennies ceased making payments to Handmade.

49. Jennies never permitted Handmade to exercise the option, despite Aslan's repeated requests and Shwom's prior assurances.

**<u>Shwom Strings Aslan Along with Empty Assurances</u>**

50. Remarkably, Shwom managed to preserve his relationship with Aslan even after Jennies' breach.

51. Shwom—who had become something of a father figure to Aslan—placated Aslan by telling him that "everyone makes mistakes" and implying that Handmade would somehow be made whole in the future.

52. Shwom's representations induced Aslan to refrain from taking legal action relating to the Agreement and Defendants' conduct.

**Shwom Sabotages Second Wind**

53. Aslan and Shwom continued to work together in various capacities and eventually agreed to pursue a new venture, with Aslan hoping that another success might prompt Shwom to revisit the unresolved dispute over the Agreement.

54. In July 2023, Aslan and Shwom organized Second Wind, a Pennsylvania limited liability company.

55. Aslan and Shwom each held a 50% membership interest in Second Wind.

56. Aslan and Shwom devoted additional time and resources to Second Wind, including by developing products and acquiring equipment.

57. Eventually, Second Wind obtained a significant national retail customer—The Marmaxx Group, which operates the T.J. Maxx and Marshalls retail chains—and received a purchase order for its product.

58. Despite the purchase order, and without any legitimate business justification, Shwom threw up roadblocks—including refusing to run the product on Second Wind's own manufacturing equipment—that caused one unnecessary delay after another.

59. Ultimately, Shwom told the customer directly that Second Wind would not fill its order.

60. When Aslan pressed Shwom about his conduct toward Second Wind—and about resolving the outstanding dispute over the Agreement—Shwom responded by unilaterally dissolving Second Wind in early 2026.

61. Aslan was, once again, left with nothing for his years of effort.

**<u>Plaintiffs Remain Uncompensated</u>**

62. Since December 2018, Plaintiffs have not received any payment from Defendants relating to the Agreement, the Products, or Second Wind.

63. Despite failing to make the required payments year after year, Defendants continue to sell the Products, which are featured prominently on Defendants' website.

64. Plaintiffs lack access to Jennies' and the New Entity's accounts and records. However, upon information and belief, tens of millions of dollars' worth of the Products have been sold since their launch, and given the Products' success, Plaintiffs estimate that their damages amount to millions of dollars.

**<u>COUNT I — BREACH OF CONTRACT</u>**
(Handmade against Jennies)

65. Plaintiffs incorporate all of the foregoing paragraphs by reference as though set forth fully herein.

66. The Agreement is a valid and enforceable contract between Handmade and Jennies.

67. Pursuant to the Agreement, Handmade agreed to create coconut bites and bars for commercial production—*i.e.*, the Products—and Jennies agreed to pay Handmade 25% of the pretax profits earned by a newly created entity—*i.e.*, the New Entity—from the sale of the Products.

68. In addition, Jennies agreed that Handmade would have the option to purchase a 25% interest in the New Entity for $100,000.

69. The Agreement was later confirmed in writing and by the parties' course of conduct. Handmade developed the Products, and Jennies initially made monthly payments to Handmade of its share of the New Entity's pretax profits.

70. However, Jennies materially breached the Agreement in December 2018 by failing and refusing to make any subsequent payments to Handmade and by refusing to honor Handmade's repeated attempts to exercise its option to acquire an ownership interest in the New Entity.

71. Each missed payment constitutes a separate breach of the Agreement.

72. As a direct and proximate result of the breaches, Handmade has suffered damages in an amount to be determined at trial but in excess of $75,000.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants for compensatory damages, together with pre- and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

**COUNT II — PROMISSORY ESTOPPEL**
(Plaintiffs against Defendants)
(*Alternative to Count I)*

73. Plaintiffs incorporate all of the foregoing paragraphs by reference as though set forth fully herein.

74. Defendants made clear and definite promises to Plaintiffs, including that Handmade would receive twenty-five percent (25%) of the pretax profits of the New Entity and would have the option to purchase a twenty-five percent (25%) interest in the business valued at $100,000.

75. Defendants' promises were made to induce Plaintiffs to take action, namely to devote Aslan's time, skill, and resources to developing the Products.

76. In reliance on Defendants' promises, Plaintiffs did, in fact, devote substantial effort and resources to developing the Products and building the brand.

77. Plaintiffs' reliance was reasonable and foreseeable, and injustice can only be avoided by enforcement of Defendants' promises.

78. As a direct and proximate result of that reliance, Plaintiffs have suffered damages in an amount to be determined at trial but in excess of $75,000.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants for compensatory damages, together with pre- and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

**COUNT III — UNJUST ENRICHMENT**
(Plaintiffs against Defendants)
(*Alternative to Counts I & II*)

79. Plaintiffs incorporate all of the foregoing paragraphs by reference as though set forth fully herein.

80. Plaintiffs conferred substantial benefits on Defendants, including the development of commercially successful product lines, the resulting profits and goodwill of the Jennies brand, and the enhancement of Defendants' business.

81. Defendants accepted and retained those benefits—including the profits generated by the products Plaintiffs developed—under circumstances in which it would be inequitable for Defendants to retain them without payment of their value to Plaintiffs.

82. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be determined at trial but in excess of $75,000.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants for compensatory damages, together with pre- and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

**COUNT IV — BREACH OF FIDUCIARY DUTY**
(Aslan against Shwom)

83. Plaintiffs incorporate all of the foregoing paragraphs by reference as though set forth fully herein.

84. As a fifty percent (50%) member of Second Wind, Shwom owed fiduciary duties of loyalty and care to Second Wind and to his fellow member, Aslan, and was obligated to act in good faith and to deal fairly.

85. Shwom breached those duties by, among other things, refusing to fulfill customer orders and deliberately interfering with Second Wind's operations—all in bad faith, for his own purposes, and contrary to the interests of Second Wind and Aslan.

86. As a direct and proximate result of Shwom's breaches of fiduciary duty, Aslan has suffered damages in an amount to be determined at trial but in excess of $75,000.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants for compensatory damages, together with pre- and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

**KANG HAGGERTY, LLC**

Dated: October 29, 2026 BY: */s/ Kyle Garabedian*

KYLE GARABEDIAN, ESQUIRE
123 South Broad Street, Suite 1950
Philadelphia, PA 19109
(215) 525-5850
kgarabedian@kanghaggerty.com
*Attorneys for Plaintiffs*